Filed 12/4/18; Certified for Publication 12/20/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SUMMERHILL WINCHESTER LLC, | H043253 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CV245585) |
| v. | |
| CAMPBELL UNION SCHOOL DISTRICT et al., | |
| Defendants and Appellants. | |

Appellants Campbell Union School District (CUSD) and Campbell Union School District Governing Board (the Board) appeal from the trial court's invalidation of the Board's 2012 resolution enacting a fee on new residential development under Education Code section 17620. CUSD and the Board contend that the trial court could not invalidate the Board's resolution and order that respondent SummerHill Winchester, LLC's fees be refunded because the Board properly relied on a fee study that used a reasonable methodology to calculate the fee. We conclude that the fee study did not contain the data required to properly calculate a development fee. Accordingly, we affirm the trial court's judgment.

## I. Background

Education Code section 17620 authorizes a school district "to levy a fee, charge, dedication, or other requirement against any [new residential] construction within the boundaries of the district, for the purpose of funding the construction or reconstruction of school facilities . . . ." (Ed. Code, § 17620, subd. (a)(1).) These fees are known as "Level 1" fees.[1] A school district "shall do all of the following: [¶] (1) Identify the purpose of the fee. [¶] (2) Identify the use to which the fee is to be put. If the use is financing public facilities, the facilities shall be identified. That identification may, but need not, be made by reference to a capital improvement plan as specified in Section 65403 or 66002, may be made in applicable general or specific plan requirements, or may be made in other public documents that identify the public facilities for which the fee is charged. [¶] (3) Determine how there is a reasonable relationship between the fee's use and the type of development project on which the fee is imposed. [¶] (4) Determine how there is a reasonable relationship between the need for the public facility and the type of development project on which the fee is imposed." (Gov. Code, § 66001, subd. (a).)

In February 2012, Jack Schreder & Associates prepared a "Level 1 Developer Fee Study" (the fee study) for CUSD.[2] In 2012, CUSD had three middle schools and nine elementary schools. The fee study calculated that, using statewide "loading factors," CUSD's capacity was 7,373 students. CUSD's enrollment already exceeded this calculated capacity by 155 students in 2009/2010. An additional 24 students were added the following school year (2010/2011), and another 132 additional students were added in

---

[1] Level 2 and Level 3 fees, which are not at issue in this case, are authorized by Government Code sections 65995.5 and 65995.7, rather than Education Code section 17620.

[2] Although the fee study was over 50 pages long, most of its length was consumed by boilerplate and some it was devoted to commercial development. The key portions for our purposes are quite brief.

2

2011/2012. Thus, at the time of the fee study, CUSD's enrollment already exceeded the fee study's calculated capacity by 311 students. The fee study also projected future enrollment growth, but these projections did not take into account any new residential construction. The fee study projected that 359 additional students would enroll in CUSD's schools over the next five years after the 2011/2012 school year.

The fee study devoted little attention to future new residential construction. There was just a single paragraph addressing how much new residential construction was expected within CUSD's boundaries in the next five years. It stated: "The City of San Jose, City of Campbell and the County of Santa Clara Planning Departments were contacted regarding current and future residential development projects within the District's boundaries. According to the planning departments, there are in excess of 133 residential units that could be constructed over the next five years. The proposed units were not included in the enrollment projection to augment the projection." Schreder had actually obtained "quantified" information from only the City of Campbell. The County of Santa Clara provided no information, and the City of San Jose had no "quantifiable" information to provide.[3]

The fee study projected that "it will cost the District an average of $22,039 to house each additional student in new facilities." This figure was based on a projected $12.8 million cost to build a new 600-student elementary school and a projected $24.4 million cost to build a new 1,000-student middle school. However, CUSD and the Board conceded that they "do not contend that there is a need to build two new schools for

---

[3] This information was contained in responses from CUSD and the Board to special interrogatories. CUSD and the Board do not and did not object to the trial court's or our consideration of this evidence. Our record contains no document identified as the administrative record in this case.

3

1,600 students for an expected capacity increase by 2016-17 of 359 students."[4]  Using statewide averages, the fee study calculated a "student yield factor" of .5 students per single-family residential unit.  It used a real estate database to estimate an average residential unit size of 1,773 square feet.  Using these figures, the fee study calculated a per square foot fee for new residential construction of $6.21.  $22,039 (per student cost for the two new schools) multiplied by .5 (students per unit) and divided by 1773 (square feet per unit) equals $6.21.  Since the statutory maximum for a Level 1 fee in 2012 was $3.20 per square foot, the fee study asserted that its calculations supported imposition of the maximum fee.[5]  As CUSD had a fee sharing agreement with the high school district under which CUSD received 70 percent of any such fee, CUSD's share was $2.24 per square foot.

In March 2012, the Board, relying on the fee study, adopted a resolution imposing a fee of $2.24 per square foot on new residential construction and making numerous findings.  The Board found that CUSD's enrollment "presently exceeds capacity, is at capacity, or will exceed capacity."  It also found that new residential construction "will increase the need for" school facilities.  The Board found:  "Substantial residential development . . . is projected within the District's boundaries and the enrollment produced thereby will exceed the capacity of the schools of the District.  As a result, conditions of overcrowding, exist or will exist, within the District, which will impair the normal functioning of the District's educational programs."  It further found that the fees proposed by the fee study were "for the purposes of providing adequate school facilities" and "will be used for construction and/or reconstruction of school facilities . . . ."  The

---

[4]     This concession was made in a response by CUSD and the Board to a special interrogatory.  CUSD and the Board did not object to this evidence in the trial court nor do they on appeal.

[5]     Government Code section 65995 sets the maximum amount that may be levied per square foot of residential construction.  (Gov. Code, § 65995, subd. (b)(1).)

4

Board concluded that there was a "reasonable relationship" between the fees and "the need for school facilities created by the types of development projects on which the fees are imposed." The Board declared that it had considered other possible revenue sources.

SummerHill Winchester, LLC (SummerHill) owns a 110-unit residential development project in the City of Santa Clara that is within CUSD's boundaries. In 2012 and 2013, SummerHill tendered to CUSD under protest development fees of $499,976.96.

## II. Procedural Background

SummerHill filed a petition for a writ of mandate and complaint for declaratory relief seeking a refund of the fees it had paid to CUSD and a declaration that the fees were invalid.[6] SummerHill alleged that CUSD's development fees were "unreasonable because they are excessive, are not roughly proportional or reasonably related to the burdens caused by the Project, and lack an essential nexus between the amount of the school development fees imposed on the Project and CUSD's alleged need to construct certain improvements and facilities for reasons that are attributable to the Project, and are therefore invalid."

SummerHill argued that "the first problem" with the fee study was that it had failed to "actually calculate actual expected growth." Schreder had obtained information from only the City of Campbell, rather than all of the cities and the County of Santa Clara within CUSD's boundaries. The second problem was that the fee study did not identify any necessary new facilities required because of new development but instead used "hypothetical schools" as the basis for its cost figures even though CUSD had no plans to build new schools. SummerHill contended: "They have to calculate how much new

---

[6] SummerHill's original petition/complaint was filed in April 2013; its amended petition/complaint was filed in February 2014.

development there will be, how many students it will generate, what capital facilities are necessary to accommodate those students, what that costs, and then do some math to spread those costs over the new development. [¶] Really, all they did was the math. They didn't do any of the rest."

CUSD and the Board responded that "eventually" CUSD would have to build new schools or "at least the potential existed for that." They claimed that the factors discussed in prior cases were inapplicable to CUSD because each of the school districts in those cases "wasn't at capacity yet" as CUSD was.

The trial court granted SummerHill's petition on the ground that the fee study did not contain sufficient support for the Board's resolution. The court ruled: "The Fee Study used to support the Resolution was defective in the following particulars: (1) it did not project the total amount of housing that was to be constructed in the district; (2) it did not adequately estimate the number of new students in the district resulting from the new development; and (3) it did not establish the necessary relationship between the number of new students and the proposed capital facilities. The Study's projection based on 'at least' 133 new units yielding 67 new students is not an acceptable alternative discretionary methodology. These hypothetical numbers may be an appropriate mathematical formula to determine a cost per student. However, the methodology fails to make a sufficient finding on the first two prongs of the *Shapell*[7] test. The third prong cannot be met because the report fails to consider the impact of funding already existing from a bond and how it might be used to accommodate the increase in the number of students. Therefore, it cannot be determined with any accuracy what developer funding is *necessary* as a result of the new residential housing. The Fee Study cost calulation is heavily dependent on two hypothetical new schools which may never be constructed. Instead, the required approach would have been to consider the cost of the real

---

[7]     *Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218 (*Shapell*).

construction plans which already existed. The Fee Study should have indicated what the district intended to do to accommodate the growth and project a cost on that basis. CUSD does not have the discretion to estimate a cost per student based on the construction of new schools when the increase in number of students may not cause the construction of any new facilities."

The court's initial order did not order CUSD to refund SummerHill's fees. Instead, it gave CUSD time to revise the fee study and enact a new resolution with recalculated fees. SummerHill moved for reconsideration on the ground that CUSD should not be permitted to revise its fee study to support recalculated fees. The court granted SummerHill's motion for reconsideration. The court concluded that a recalculation was not possible without "amending some of the data relied upon by the Board." It ordered that SummerHill's fees be refunded.

The court issued a statement of decision and a peremptory writ of mandate requiring CUSD and the Board to set aside the resolution and refund SummerHill's fees. CUSD and the Board timely filed a notice of appeal. The trial court subsequently denied SummerHill's motion for attorney's fees under Code of Civil Procedure section 1021.5.

### III. Discussion
### A. Standard of Review

The Board's enactment of the challenged fees was a quasi-legislative action that SummerHill challenged by ordinary mandamus. Under these circumstances, " '[a] court will uphold the agency action unless the action is arbitrary, capricious, or lacking in evidentiary support. A court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute.' " (*Shapell*, *supra*, 1 Cal.App.4th at p. 232.) "[T]he ultimate question, whether the agency's action was arbitrary or capricious, is a question of law." (*Shapell*, at p. 233.) Consequently, we accord no

7

deference to the trial court's decision.[8]  (*Ibid.*)  Our role, like the trial court's, is to determine whether the enactment of the challenged fees by CUSD and the Board lacked evidentiary support or failed to demonstrate a rational connection between the relevant factors, the purpose of the statute, and the decision to enact the fees.

## B.  Analysis

"[F]acilities fees are justified only to the extent that they are limited to the cost of increased services made necessary by virtue of the development.  [Citations.]  The Board imposing the fee must therefore show that a valid method was used for arriving at the fee in question, 'one which established a reasonable relationship between the fee charged and the burden posed by the development.'  [Citations.]  [¶]  In our view such a showing with respect to the fees in this case must involve the interrelation of three elements.  First, since the fee is to be assessed per square foot of development, there must be a projection of the total amount of new housing expected to be built within the District.  Second, in order to measure the extent of the burden imposed on schools by new development, the District must determine approximately how many students will be generated by the new housing.  And finally, the District must estimate what it will cost to provide the necessary school facilities for that approximate number of new students."  (*Shapell*, *supra*, 1 Cal.App.4th at p. 235.)  "Since the process required of the District will necessarily involve predictions regarding population trends and future building costs, it is not to be expected that the figures will be exact.  Nor will courts concern themselves with the

---

[8]      We have received amicus briefs from the California School Boards Association's Education Legal Alliance and from the Coalition for Adequate School Housing and California Association of School Business Officials in support of CUSD and the Board. They argue that the trial court failed to apply the appropriate standard of deferential judicial review.  Since our review is independent of the trial court's review, this argument is only pertinent to our review standard.  It does not matter what review standard was applied by the trial court.

District's methods of marshalling and evaluating scientific data. [Citations.] Yet the court must be able to assure itself that before imposing the fee the District engaged in a reasoned analysis designed to establish the requisite connection between the amount of the fee imposed and the burden created. We do not believe this can be accomplished without addressing all three factors enumerated above." (*Shapell*, at pp. 235-236.)

CUSD and the Board argue that the fee study upon which the Board based its resolution satisfied the three-factor test set forth in *Shapell*. We conclude that it did not. The fee study began by failing to project the "total amount of new housing expected to be built within the District." (*Shapell*, *supra*, 1 Cal.App.4th at p. 235.) Instead, the fee study simply stated that the amount of new residential development would be "in excess of 133 residential units." While precision is not required (*Shapell*, *supra*, 1 Cal.App.4th at pp. 235-236), this vague and unrestricted figure is little better than saying that "some" development is anticipated since it provides no guidance for CUSD and the Board to determine *whether* new school facilities are needed due to the anticipated development.

CUSD and the Board claim that the mere fact that CUSD's enrollment already exceeded its capacity eliminated the need for any estimate of how much new development was expected. Not so. The reason why a projection of the total amount of new development is necessary is that this projection provides the basis for the estimate of the new students who can be expected to be generated by the new development. The fee study used its "in excess of 133 residential units" estimate to calculate that this amount of residential development would produce *at least* 67 new students. Like the fee study's failure to estimate the total amount of new development, the fee study's reliance on its assertion that at least 67 new students would be generated by new development could not provide a basis for the Board to determine *whether* new school facilities were needed. Indeed, despite the fact that the fee study based its calculations on the cost of building two new schools, CUSD and the Board do not dispute that even the total projected enrollment increase (including both new students from new development and other new

9

students) will *not* necessitate the construction of such schools. Consequently, the fee study's methodology lacked an evidentiary basis.

Without a realistic estimate of how many students would be generated by new development, the fee study could not provide the requisite foundation for the Board to decide what steps needed to be taken to accommodate projected enrollment increases. While CUSD and the Board did not have to identify *specific facilities that would be built* or make "concrete construction plans" (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 335 (*Garrick*)), they did need to decide whether or not new school facilities were needed and, if so, what *type* of facilities were needed (*ibid*). In *Garrick*, for instance, the school district was "at or near capacity" in its elementary and middle schools. (*Garrick*, at pp. 332-333.) The fee study in *Garrick* projected that "approximately 16,400 dwelling units" would be developed within the district during the time period in question and that these new dwelling units would generate thousands of new students. (*Garrick*, at p. 326, fn. 4.) These projections provided a reasonable basis for the school district to decide that multiple new schools would be needed to accommodate the thousands of new students that were expected to be generated by new development. (*Garrick*, at pp. 332-333.)

CUSD and the Board, in contrast, were indisputably *not* going to be building the hypothetical new schools upon which the fee study premised the fees. And the fee study provided no basis for the Board to decide whether new school facilities were needed or what type of new or reconstructed school facilities might be required because the fee study lacked quantified information about the total amount of new development that was expected and the number of students it could be expected to generate. It was not enough, as CUSD and the Board claim, that the Board stated in its resolution that the fees would be used for "school facilities." Government Code section 66001 requires that "the facilities *shall be identified.*" (Gov. Code, § 66001, subd. (a)(2), italics added.) The fee

10

study could not identify the *cost* on which to base the fees without identification of facilities that would satisfy quantified needs.

CUSD and the Board argue that the fee study here must be deemed sufficient to support their fees because the fee study in *Garrick*, which was found sufficient, "involved the same general methodology" as the one here. We disagree. Here, unlike in *Garrick*, the fee study made no quantifiable projection of the amount of new development that could be expected, and the Board made no decision to construct new schools to accommodate the unknown number of new students that might be generated by this unknown amount of new development. The Board's decision to enact a development fee in this case is invalid because the Board did not decide that its enrollment increases would necessitate the construction of new schools but nevertheless based the amount of the development fee on the cost of building new schools. This discontinuity precluded the Board from being able to demonstrate a reasonable relationship between the impact of new development and the development fee. While courts defer to the reasonable legislative choices made by school district boards, those boards still must comply with the enabling statutes governing the fees that they impose. The Board did not do so here.

CUSD and the Board claim that, even if they failed to satisfy the three *Shapell* factors, the fee must be upheld because they applied an "alternative" "reasonable methodology" that was sufficient to support the fee. They insist that because CUSD's enrollment already exceeds its capacity "every single additional student generated by development will result in a financial impact on the District."[9] We accept the validity of

---

[9] CUSD and the Board assert: "Since every student generated by development would necessitate new or expanded facilities, each individual new student generates the same per-student financial cost to the at-capacity school district." Even if this were true, that "financial cost" depends on what type of facilities will be used to accommodate those students. The fee study did not consider this question but instead based its financial cost calculation on hypothetical new schools that CUSD and the Board did not plan to use to accommodate the new students generated by new development.

11

this statement, but it does not satisfy the statutory requirement that CUSD and the Board demonstrate a relationship between the *amount* of the fee and impact of development on *the need for new or reconstructed school facilities*. Here, the fee study's use of hypothetical new schools that CUSD was not going to build as the financial premise for calculating the fee was not a reasonable alternative methodology that could legally support the fee imposed by the Board. Like the "in excess of 133 residential units" and the *at least 67 students*, "*a* financial impact" lacks quantification. That "financial impact" can only be quantified by using the *Shapell* factors or some other *reasonable* methodology. The fee study did not do so.

CUSD and the Board claim that the superior court erred in concluding that the fees could not be "recalculated." No "recalculation" is possible since the fee study failed to provide any of the data necessary to make such a calculation. The key missing element was what new facilities would be necessary for the new students generated by new residential development. The fee study failed to quantify the expected amount of new development or the number of new students it would generate, did not identify the type of facilities that would be necessary to accommodate those new students, and failed to assess the costs associated with those facilities. The trial court did not err in finding that recalculation was impossible under these circumstances.

Finally, CUSD and the Board maintain that the trial court prejudicially erred in disregarding two declarations that it proffered. "It is well settled that extra-record evidence is generally not admissible in non-CEQA traditional mandamus actions challenging quasi-legislative administrative decisions." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 574.) "Although extra-record evidence is not admissible to contradict evidence upon which the administrative agency relied in making its quasi-legislative decision, or to raise a question regarding the wisdom of that decision [citation], it may be admissible to provide background information regarding the quasi-legislative agency decision, to establish whether the agency fulfilled its duties in making

12

the decision, or to assist the trial court in understanding the agency's decision." (*Outfitter Properties, LLC v. Wildlife Conservation Bd.* (2012) 207 Cal.App.4th 237, 251.)

CUSD submitted a declaration from James Crawford, a CUSD employee. Crawford authenticated several documents, including a "Board Policy" adopting class size standards and the Board's collective bargaining agreement with the teacher's association, which specified class sizes. Crawford declared that CUSD's enrollment already exceeded its capacity by over 300 students in the 2011/2012 school year. CUSD also submitted a declaration from Jack Schreder, who had prepared the fee study. Schreder declared: "The per-student cost remains the same regardless of the number of new units developed, with the exception that when the development count gets large enough, land costs must be added in." SummerHill objected to and moved to strike portions of the Crawford and Schreder declarations, and the trial court "disregarded" these declarations.

Since neither of these declarations provided the data that was missing from the fee study, the trial court's decision to disregard them was immaterial.

## IV.  Disposition

The judgment is affirmed.

13

_____
Mihara, J.

WE CONCUR:


_____
Greenwood, P. J.


_____
Elia, J.


SummerHill Winchester LLC v. Campbell Union School District
H043253

14

Filed 12/20/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SUMMERHILL WINCHESTER LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CAMPBELL UNION SCHOOL DISTRICT et al., <br><br> Defendants and Appellants. | H043253 <br> (Santa Clara County <br> Super. Ct. No. CV245585) <br><br><br> ORDER CERTIFYING OPINION <br> FOR PUBLICATION |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on December 4, 2018, shall be certified for publication.

Date:                                _____
                                          Mihara, J.

                                          _____
                                          Greenwood, P. J.

                                          _____
                                          Elia, J.

Trial Court:                                    Santa Clara County Superior Court


Trial Judge:                                    Honorable James L. Stoelker


Attorneys for Plaintiff and Respondent:        Andrew L. Faber
                                                Richard E. Nosky, Jr.
                                                Berliner Cohen, LLP


Attorneys for Defendants and Appellants:       Harold M. Freiman
                                                Mark W. Waterman
                                                Kelly Marie Rem
                                                Lozano Smith


Attorneys for Amicus Curiae
California School Boards
Association/Education Legal Alliance:           James Richard Traber
                                                Anna Barth
                                                Fagen Friedman & Fulfrost, LLP

                                                Keith Bray
                                                D. Michael Ambrose
                                                California School Boards Association/
                                                Education Legal Alliance


Attorneys for Amicus Curiae
Coalition for Adequate School Housing
and California Association of School
Business Officials:                             Martin Anthony Hom
                                                Jennifer D. Cantrell
                                                Atkinson, Andelson, Loya, Ruud &
                                                Romo

SummerHill Winchester LLC v. Campbell Union School District
H043253